UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 23-60173-CR-WILLIAMS/HUNT

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CAROLYN DENISE WADE and
TRACY D. WADE,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on Defendant Carolyn Wade's Motion to Dismiss Superseding Indictment. ECF No. 134. The Honorable Kathleen M. Williams referred this Motion to the undersigned for a report and recommendation. ECF Nos. 136, 137; *see also* 28 U.S.C. § 636(b); S.D. Fla. Mag. R. 1. The undersigned held a hearing on September 26, 2024. Having considered the Motion and Response and having considered the representations made by counsel at the hearing, the undersigned hereby recommends for the reasons outlined below that Defendants' Motion be DENIED.

## BACKGROUND

Carolyn Wade was charged in a one-count Indictment alleging wire fraud in connection with a Paycheck Protection Program ("PPP") application. The Indictment alleged that Ms. Wade, a Broward Sheriff's Office (BSO) Deputy, applied for a PPP loan and included materially false information in her application, including a claim that she operated a business that generated over $100,000 in gross income. Ms. Wade was

arraigned on October 19, 2023, at which time the Court entered the Court's Standing Discovery Order, which incorporates Local Rule 88.10's *Brady* disclosure requirement, as well as the Due Process Protections Act Order, which specifically required the government to disclose to the defense all material exculpatory evidence as required by *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny.  Prior to trial, defense counsel advised the government that Ms. Wade's theory of defense was that any false information on her application had been submitted by another person, Haydee Granados, without Ms. Wade's knowledge.

During the course of trial preparation, the government subpoenaed records from a technology company (Womply) that assisted the SBA with PPP applications.  The subpoena requested documents related to Ms. Wade's application, but also other PPP applications filed from the same IP addresses.  On March 14, 2024, defense counsel specifically requested from AUSA Snider any information in the government's possession related to Ms. Granados' involvement in preparing Ms. Wade's application.  AUSA David Snider responded that he was under no obligation to interview Ms. Granados.

The government received the Womply response to its trial subpoena on March 16, 2024.  On March 18 (the next business day) the government produced all records in the "Carolyn Wade" folder but had not reviewed the content of the other 20 (third party) folders, which had no obvious connection to Ms. Wade.

On April 29, 2024, defense counsel contacted AUSA Snider related to a defense subpoena to the SBA.  After reviewing the proposed subpoena and motion, AUSA Snider noted that the subpoena requested records related to Haydee Granados and realized that one folder in the Womply production bore that name.  Mr. Snider contacted defense

2

counsel that same day and advised that he had received from Womply third-party PPP applications, including the Granados folder, but that he had not reviewed the contents of this or any of the third-party folders.  Realizing that this folder could contain the same records Defendant was seeking through its subpoena, AUSA Snider offered to provide these documents to the defense (subject to a protective order).  The defense contends that these files constitute *Brady* material that the government failed to timely disclose.

AUSA Snider told defense counsel that he believed he had no obligation to disclose these third-party applications but was willing to do so "as a courtesy to Defendant." ECF No. 146 at 6.  The next day, AUSA Snider emailed defense counsel a list of the 20 third-party folders and asked which folders they wanted.  Following the entry of an agreed protective order, ECF No. 48, 49, the government then provided all 20 of the folders, as requested by Defendant.

These documents were provided to the defense on May 1, 2024.  Defense counsel lodged no complaints about the production, either to opposing counsel or the Court, prior to trial.  Defendant went to trial in May 2024 before the Honorable Donald L. Graham, U.S. District Judge, and a jury.  Trial commenced on May 13, 2024.  The government did not list Ms. Granados as a witness, did not subpoena her or call her as a witness, and had no contact with her until after the trial ended.  The defense did not offer any evidence from the 20 third-party folders at trial.[1]  The defense did subpoena Ms. Granados (and

---

[1] The defense contends that evidence of Granados' involvement in the preparation of the 20 additional PPP loan applications containing false information would have been admissible under Fed. R. Evid. 404(b).

3

her husband) for trial, but both invoked their Fifth Amendment privilege and did not testify.[2]

The jury was unable to reach a verdict, and the Court declared a mistrial. The government later sought and obtained a superseding indictment adding an additional defendant and additional false statement charges. The case is currently set for trial October 7, 2024.

The defense contends that if the government had "disclosed to the defense that Haydee Granados was involved in the preparation of PPP loan applications which contained false information" prior to the first trial, this evidence would have been presented at the trial, creating a "reasonable possibility" that Ms. Wade would have been acquitted. The defense maintains the government's conduct was "so egregious that dismissal of the superseding indictment is the appropriate sanction." ECF No. 134 at 5.

## LEGAL STANDARD

Under long-standing precedent beginning with *Brady v. Maryland*, the prosecution must disclose "evidence which is advantageous to the defendant, and which, if suppressed, would deprive him or her of a fair trial." *United States v. Beale*, 921 F.2d 1412, 1426 (11th Cir. 1991). This does not mean all evidence. The government need only disclose during pretrial discovery (or later, at the trial) evidence which, in the eyes of a neutral and objective observer, could alter the outcome of the proceedings. *United States v. Jordan*, 316 F.3d 1215, 1251–52 (11th Cir. 2003). The government does not,

---

[2] Defendant filed a motion during trial alleging prosecutorial misconduct for interfering with Defendant's right to call these witnesses to testify at trial. Following an evidentiary hearing, Judge Graham denied the motion, stating: "I don't see any improper governmental interference." ECF No. 146 at 8 and Ex.3.

however, have an obligation to seek evidence of which it has no knowledge, or which is not in its possession. *United States v. Luis-Gonzalez*, 719 F.2d 1539, 1548 (11th Cir. 1983).

To establish a *Brady* violation, a defendant must show: 1) the cumulative effect of evidence was favorable because it was exculpatory or impeaching; 2) the evidence was willfully or inadvertently suppressed by the prosecution; 3) the evidence was material; and 4) the failure to disclose the evidence was prejudicial. *Bradley v. Nagle*, 212 F.3d 559, 566 (11th Cir. 2000) (citation omitted). This standard does not require the government to provide its entire case file to the defense, only "material" evidence. *Stephens v. Hall*, 407 F.3d 1195, 1203 (11th Cir. 2005) (citing *United States v. Bagley*, 473 U.S. 667, 675 (1985)). Evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682.

Finally, there is no "suppression" by the government of exculpatory evidence, and thus no *Brady* violation, if the defendant or the defense attorney knows before trial of the allegedly exculpatory information. *Felker v. Thomas*, 52 F.3d 907 (11th Cir. 1995), *modified*, 62 F.3d 342 (11th Cir. 1995); *Wright v. Hopper*, 169 F.3d 695 (11th Cir. 1999); *Maharaj v. Secretary for the Dep't of Corrs.*, 432 F.3d 1292, 1315 (11th Cir. 2006).

Although dismissal of an indictment for prosecutorial misconduct, including *Brady* violations, is an extreme sanction, it is a sanction within a court's discretion if sufficiently egregious prosecutorial misconduct is shown, along with prejudice to the defendant. *United States v. Lyons*, 352 F. Supp. 2d 1231 (M.D. Fla. 2004); *United States v. O'Keefe*,

825 F.2d 314, 318 (11th Cir. 1987).  Normally the most severe sanction available for a *Brady* violation is a new trial, but dismissal with prejudice may be proper where a defendant can show both willful misconduct by the government and prejudice.  *Gov't of Virgin Islands v. Fahie*, 419 F.3d 249 (3d Cir. 2005).

Actual prejudice to the defendant is a necessary element when a defendant seeks to dismiss an indictment for prosecutorial misconduct.  *United States v. Accetturo*, 858 F.2d 679, 681 (11th Cir. 1988).  The United States Supreme Court has made clear that dismissing an indictment for misconduct that did not prejudice the defendant is inappropriate. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) ("a district court exceeds its powers in dismissing an indictment for prosecutorial misconduct not prejudicial to the defendant").  Even when misconduct and prejudice can be shown, courts must first determine whether a less severe remedy than dismissal could address the constitutional violation.  *Accetturo*, 858 F.2d at 681 ("dismissal of an indictment for prosecutorial misconduct is an extreme sanction which should be infrequently utilized") (quoting *United States v. Pabian,* 704 F.2d 1533, 1536 (11th Cir. 1983)); *see also O'Keefe*, 825 F.2d at 318.  Dismissal for a due process violation requires the government's conduct to "be so grossly shocking and outrageous as to violate the universal sense of justice." *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020) (citation omitted).

## DISCUSSION

### 1. Is it *Brady?*

Defendant asserts, without much explanation, that the material contained in the third-party folders is *Brady* material.  The government disagrees, further asserting it was

6

not aware prior to the trial that the folders contained any false or fraudulent PPP applications. Nor did the government investigate any of the third parties whose files were in the disclosure. The government states Ms. Granados had not been interviewed and she was not under investigation at this time. Yet Defendant asserts in her Motion that defense counsel had advised the government that Ms. Wade's theory of defense was that any false information in her PPP applications had been submitted by Ms. Granados without Ms. Wade's knowledge. And it is undisputed that somewhere along the line the government knew the defense was seeking records and information related to Ms. Granados. But wanting information does not necessarily make it *Brady.*

To qualify as *Brady,* evidence must be favorable to the defense and material. *Bradley,* 212 F.3d at 566. The government contends the evidence of other fraudulent loans prepared by Ms. Granados is not only not favorable but is incriminating. The government introduced evidence at trial, and argued to the jury, that Defendant paid Ms. Granados $5,000 for uploading the allegedly fraudulent Schedule C in support of her PPP application. In its view, evidence that Ms. Granados was similarly assisting others to commit fraud bolstered the government's case, rather than damaged it. Citing *Jordan*, the government argues that "in no way could such evidence, in the eyes of a neutral and objective observer, alter the outcome of the proceedings in Defendant's favor." ECF No. 146 at 13. Moreover, the government argues, the evidence did not qualify as discoverable impeachment material because Granados was not a government witness and did not testify at trial.[3]

---

[3] At oral argument, the Government confirmed that Ms. Granados will be a witness at the upcoming trial, but that has no bearing on this motion.

7

Still, the fact that Ms. Granados allegedly participated in submitting multiple fraudulent documents for multiple other PPP applicants is at least arguably *consistent* with Ms. Wade's articulated defense that Ms. Granados committed fraud on Ms. Wade's behalf without her knowledge. Sometimes *Brady* is in the eyes of the beholder. But a determination as to whether this material might have been *Brady* is not really necessary here, as the evidence was not suppressed and, as discussed below, Defendant suffered no prejudice.

**2. Was it suppressed?**

The timeline of production of this evidence has been set out in the Background section of this Report. It is clear AUSA Snider, upon learning that documents in his possession pursuant to a government trial subpoena might also be responsive to an upcoming defense subpoena, immediately provided them to the defense subject to an agreed-upon protective order. The material was provided to the defense on May 1, 2024, and trial began on May 13, 2024. In short, the material was not suppressed; it was disclosed well in advance of trial. *See, e.g., Felker*, 52 F.3d at 910 ("We have held numerous times that there is no suppression, and thus no *Brady* violation, if either the defendant or his attorney knows before trial of the allegedly exculpatory information.") (collecting cases).

If defense counsel felt more time was needed to synthesize and investigate the material, counsel had remedies available, for example, moving for a continuance of the trial. But even without a continuance, evidence disclosures far later in the game than this have been held not to be a *Brady* violation. *See*, *e.g., United States v. Simms*, 385 F.3d 1347, 1358 (11th Cir. 2004) (affirming no violation where *Brady* information was disclosed

8

on the day of trial); *United States v. Bueno-Sierra*, 99 F.3d 375, 379–80 (11th Cir. 1996) (affirming defendants were not prejudiced by mid-trial *Brady* disclosure where recess allowed defense time to consider new material).  The undersigned finds that there was no suppression of *Brady* material in this case.

### 3. Was there prejudice?

Finally, even if there had been suppression of *Brady* material here, Defendant cannot show actual prejudice, as is required if the exceptional remedy of dismissal is to be granted.  *Accetturo*, 858 F.2d at 681; *O'Keefe*, 825 F.2d at 318.  Defendant had the allegedly exculpatory evidence at least ten days before trial started.  Defense counsel never objected to the timeliness of the production, nor does the record reflect any motion to continue or other request for relief from the Court based on untimely disclosure. Despite Defendant's claim that the evidence was exculpatory and admissible under Federal Rule of Evidence 404(b), ECF No. 134 at 8, the undersigned is unaware of any effort by the defense to introduce any of this evidence at the first trial.  And, most obviously, the defense has now had this evidence for *five months* with trial still a week away.  Any argument that the defense has been prejudiced by late disclosure is unpersuasive and certainly does not rise to the level of justifying the "extreme" and "infrequently utilized" sanction of dismissal.  *Accetturo*, 858 F.2d at 681.

## RECOMMENDATION

Based on the foregoing, the undersigned RECOMMENDS Defendant's Motion to Dismiss Superseding Indictment, ECF No. 134, be DENIED.

After being served with a copy of this Report and Recommendation, Defendant must file any written objections to any of the above findings and recommendations on or

9

before Wednesday, October 2, at noon, and the government must file any response on or before Friday, October 4, at noon, as provided by the Local Rules for this district. 28 U.S.C. §636(b)(1); S.D. Fla. Mag. R. 4(b). The Parties are hereby notified that a failure to timely object waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3–1 (2016); see Thomas v. Arn, 474 U.S. 140 (1985).

**DONE and SUBMITTED** at Fort Lauderdale, Florida, this 30th day of September 2024.

_____
PATRICK M. HUNT
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Kathleen M. Williams
The Honorable Donald Graham
All counsel of record